**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : : | |
| STRIKEFORCE TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. A. No. 13-490-RGA-MPT |
| | : | |
| PHONEFACTOR, INC., | : | |
| and FIRST MIDWEST BANCORP, INC. | : | |
| | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION (Amended)

## I. INTRODUCTION

On March 28, 2013, StrikeForce Technologies, Inc. ("StrikeForce") brought this action against First Midwest Bancorp, Inc. ("FMBI"), and PhoneFactor, Inc. ("PhoneFactor"), alleging infringement of U.S. Patent No. 7,870,599, (the "'599 patent").[1] Following an initial motion to dismiss, StrikeForce filed an amended complaint on June 25, 2013.[2] Presently before the court is FMBI's motion to dismiss the amended complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3] Because StrikeForce has sufficiently pled only one of its claims, FMBI's motion to dismiss should be denied in part and granted in part.

## II. BACKGROUND

### A.    Factual Allegations

StrikeForce is a corporation incorporated in the state of Wyoming, with its

---

[1] D.I. 1.  A third defendant was dismissed.
[2] D.I. 34.
[3] D.I. 31.

principal place of business located in Edison, New Jersey.[4]  FMBI is a corporation incorporated in the state of Delaware, with its principal place of business in Itasca, Illinois.[5]  FMBI has a subsidiary, First Midwest Bank, which operates in the state of Illinois.[6]  First Midwest Bank is not a party to this action.

StrikeForce owns the '599 patent.[7]  This patent is directed to a multichannel security system and method for authenticating a user seeking access to websites and virtual private networks (VPNs), such as those used for conducting banking, social networking, business activities, and other online services.[8]  This technology is sometimes referred to as "out-of-band" authentication.[9]

In 2011, PhoneFactor submitted to the U.S. Patent and Trademark Office a patent application for out-of-band authentication.[10]  StrikeForce subsequently contacted PhoneFactor, giving notice of its '599 patent.[11]  Prior to PhoneFactor's application, in August 2010, PhoneFactor and First Midwest Bank entered into a three year agreement, in which PhoneFactor would provide First Midwest Bank with its service.[12]  StrikeForce claims both PhoneFactor and FMBI infringe the '599 patent by making, using, offering for sale, or selling a system and method for out-of-band authentication.[13]

StrikeForce alleges a number of facts addressing the intermingling between First

---

[4] D.I. 34 at ¶ 1.
[5] *Id.* at ¶ 3.
[6] *Id.* at ¶¶ 16-17.
[7] *Id.* at ¶ 10.
[8] *Id.* at ¶ 10.
[9] *Id.*
[10] *Id.* at ¶¶ 12-14.
[11] *Id.*
[12] *Id.* at ¶¶ 23-24.
[13] *Id.* at ¶ 26.

Midwest Bank and FMBI.  For example, First Midwest Bank and FMBI are headquartered at the same location in Illinois.[14]  Nearly all of the value of FMBI's $8.1 billion in assets is attributable to First Midwest Bank.[15]  The official web page for First Midwest Bank contains "Investor Relations" pages referencing information related to corporate governance, stock information, and how one can invest in the company, all of which relate to FMBI.[16]  First Midwest Bank has the same governance policies and procedures adopted by FMBI.[17]  Finally, FMBI and First Midwest Bank have the same Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Treasurer, Corporate Secretary and Chief Risk Officer.[18]

### B.      Position of the Parties

StrikeForce argues FMBI's subsidiary, First Midwest Bank, infringes its patent.[19] It contends FMBI is liable for that infringement under two similar theories:  (1) FMBI and First Midwest Bank are alter egos of each another, and (2) First Midwest Bank infringed in its capacity as an agent of FMBI.[20]

FMBI argues StrikeForce's amended complaint does not satisfy the pleading standards of FED. R. CIV. P. 8(a) because it fails to allege facts sufficient to support an infringement claim.[21]  Specifically, FMBI claims StrikeForce fails to touch the "fraud or injustice in use of the corporate form" element under both the alter ego theory and

---

[14] *Id.* at ¶ 17.
[15] *Id.*
[16] *Id.* at ¶ 19.
[17] *Id.* at ¶ 20.
[18] *Id.* at ¶ 21.
[19] D.I. 36 at 3.
[20] D.I. 34 at ¶¶ 22-24.
[21] D.I. 39 at 2.

agency theory.[22]  FMBI also argues StrikeForce has not alleged that FMBI directed the specific infringing actions of First Midwest Bank, a necessary element for agency.[23] Finally, FMBI asserts any alleged facts supporting the missing elements are merely legal conclusions, and do not constitute a well-pled complaint.[24]

In response to FMBI's motion to dismiss, StrikeForce insists it has successfully pleaded a claim, specifically by arguing "fraud" is not a mandatory component of the alter ego theory,[25] and the amended complaint is replete with allegations supporting agency.[26]  Furthermore, StrikeForce points out that FMBI, in its motion to dismiss, includes and relies upon documents not integral to or explicitly relied upon in the complaint, and therefore, the motion to dismiss must be converted to a motion for summary judgment, which, in turn, would require the completion of discovery before a decision can be made.[27]

## III.   STANDARD OF REVIEW

### A.   Motion to dismiss for failure to state a claim

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of FED. R. CIV. P. 8(a)(2) is necessary.  It requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-

---

[22] *Id.* at 5-8.

[23] *Id.*

[24] *Id.* at 8-9.  StrikeForce effectively concedes the absence of any allegation in the amended complaint contending the use of the corporate structure operates as a fraud.  D.I. 36 at 10.

[25] *Id.*

[26] *Id.* at 14.

[27] *Id.* at 7.

defendant-unlawfully-harmed-me accusation."[28]  Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[29]

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[30]  Evaluating a motion to dismiss requires the court to accept as true all material allegations of the complaint.[31]  When evaluating, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[32]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in light most favorable to the plaintiff, plaintiff is not entitled to relief."[33]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[34]  A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions."[35]  Heightened fact pleading is not required; rather, plaintiff

---

[28] *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009) (citing *Bell Atl. Corp. V. Twombly*, 550 U.S. 554, 555 (2007)).

[29] *Id.* (citing *Twombly,* 550 U.S. at 570).  *See also* FED. R. CIV. P. 12(b)(6).

[30] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[31] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[32] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[33] *Maio v. Aetna, Inc.*, 221 F.3d 427, 481-81 (3d Cir. 2000) (internal quotation marks and citations omitted).

[34] *Twombly*, 550 U.S. at 555.  *See also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[35] *Twombly*, 550 U.S. at 555.

must allege "enough facts to state a claim to relief that is plausible on its face."[36]  A

claim has facially plausibility when its factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.[37]

> ### B.    Conversion of motion to dismiss into motion for summary judgment

A court ruling on a motion to dismiss may consider documents integral to or

explicitly relied upon in the complaint, though it may not consider matters extraneous to

the pleadings without converting the motion to dismiss into a motion for summary

judgment.[38]  Consequentially, a court must convert a Rule 12(b)(6) motion to dismiss

into a Rule 56 motion for summary judgment when considering extraneous

documents.[39]  Once the court considers extraneous documents, it has gone beyond the

scope of the complaint and is analyzing the merits of the case.

If a motion under FED. R. CIV. P. 12(b)(6) is converted to a motion under FED. R.

CIV. P. 56, a plaintiff is entitled to conduct discovery before the motion can be

resolved.[40]  In such circumstances, this court has denied a motion to dismiss with leave

to re-file a motion for summary judgment following the close of fact discovery.[41]

## II. DISCUSSION

A complaint for patent infringement that includes the information set forth in the

---

[36] *Id.* at 570.

[37] *Id.*

[38] *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[39] *See id.  See also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *Switlik v. Hardwicke Co.*, 651 F.2d 852, 857 (3d Cir. 1981); *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000).

[40] FED. R. CIV. P. 56(d).

[41] *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, No. 10-63-LPS, 2011 U.S. Dis. LEXIS 43248 (D. Del. Apr. 21, 2011).

sample complaint published as Form 18 to the FED. R. CIV. P. adequately pleads a claim for relief if it alleges facts supporting the following:  (1) issuance of the patent and the plaintiff's ownership of the patent, (2) the defendant's infringement of the patent, and (3) the plaintiff marked its product.[42]

StrikeForce's amended complaint undisputedly contains two of these three elements.  It alleges the issuance of the patent and its ownership thereof.[43]  The complaint also avers that StrikeForce marked its product.[44]  Further, the complaint alleges defendant's subsidiary, First Midwest Bank, infringed by entering into a contract with co-defendant, PhoneFactor, for use of PhoneFactor's out-of-band authentication service.[45]  The question here is whether StrikeForce has asserted facts supporting FMBI's liability for First Midwest Bank's alleged infringement.

A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship.[46]  Liability requires piercing the corporate veil, which may be permissible under either of two distinct tests:  (1) the alter ego test, or (2) the agency test.[47]  StrikeForce argues on the basis of both tests.  While StrikeForce has not alleged sufficient facts to support alter ego, it has alleged enough facts to support pure agency liability.  Therefore, FMBI's 12(b)(6) motion should be denied in regard to

---

[42] FED. R. CIV. P.,  Form 18.

[43] *See* D.I. 34 at ¶¶ 9-10.

[44] *See id.* at ¶ 12.

[45] *Id.* at ¶ 24.

[46] *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426 432 (D. Del. 2005) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

[47] *Id.* (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-86 (3d Cir. 2001); *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559-60 (D. Del. 1998); *Mobile Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 265-72 (D. Del. 1989)).

agency, but granted as to alter ego.

### A.    Alter Ego Theory

StrikeForce argues First Midwest Bank and FMBI are alter egos of one another.[48]  Under the alter ego analysis, a subsidiary may be regarded as the alter ego of its parent corporation and render the parent liable if two requirements are met:  (1) "a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined," or "where a corporate parent exercises complete domination and control over its subsidiary," and (2) the use of the corporate form would cause fraud or a similar injustice.[49]

StrikeForce's allegations regarding the relationship between FMBI and First Midwest Bank establish that the two entities are commingled.  FMBI and First Midwest Bank have a nearly identical board of officers and directors; the majority of FMBI's assets are attributable to First Midwest Bank; both corporations employ the same governance polices and procedures; both corporations operate from the same location in Illinois.  While these allegations meet the first element, StrikeForce has not alleged any facts suggesting fraud or injustice in FMBI's use of the corporate form.

StrikeForce does not initially argue that this second element was alleged in the

---

[48] In StikeForce's amended complaint, it alleges FMBI and First Midwest Bank are alter egos of one another.  D.I. 34 at ¶ 22.  In its brief in opposition to FMBI's motion to dismiss, StrikeForce initially claims FMBI is the alter ego of First Midwest Bank, but then argues FMBI "completely dominates and controls First Midwest Bank."  D.I. 36 at 9.  The latter argument treats First Midwest Bank as the alter ego of FMBI, rather than the other way around.

[49] See *Mobile Oil*, 718 F. Supp. at 266.  *See also Outokumpu Engineering Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (D. Del. 1996); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991).

amended complaint, but instead claims fraud is not required under the alter ego theory.[50]  StrikeForce relies heavily on *Mobile Oil Corp. v. Linear Films, Inc.* ("*Mobile Oil*"), by quoting as follows from this decision:  "[t]he terminology used by courts in considering whether a parent corporation will be held liable for the actions of its subsidiary has not been a model of clarity."[51]  StrikeForce further argues the alter ego theory is muddled, and the cases outside the realm of patent infringement cannot be applied wholesale.[52]  In making this argument, StrikeForce overlooks the infringement claim at issue in *Mobile Oil*, and that court specifically held fraud or something similar is required under the alter ego theory.  According to *Mobile Oil*, holding a parent corporation liable for the infringement of its subsidiary under alter ego theory, "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration[s] . . . are involved."[53]

In *Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk* ("*Lutyk*"), the Third Circuit affirmed the requirement of injustice or fundamental unfairness in defendant's use of the corporate form, but rejected a rigid test demanding proof of actual fraud.[54]  *Lutyk* highlights a number of factors that, if present, may suggest fraud or injustice in the corporate form.[55]  StrikeForce fails to address any of

---

[50] D.I. 36 at 10.

[51] *Id.*

[52] *Id.*

[53] *Mobile Oil*, 718 F. Supp. at 268 (quoting *Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968)).

[54] 332 F.3d 188 (3d Cir. 2003)

[55] *See Lutyk*, 332 F.3d at 194 ("We considered the following *factors*:  gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate

9

these factors in the amended complaint or allege anything suggesting fraud or other similar injustice in the structure of FMBI and First Midwest Bank.  Contrary to StrikeForce's first argument, fraud or some similar injustice is a required element for finding alter ego liability.

After noting *Lutyk* and *Mobile Oil* and then implicitly conceding the requirement of fraud or similar injustice element, StrikeForce argues the alter ego test is highly fact-specific and requires balancing many factors viewed in the totality of the circumstances.[56]  While this may be true for a final determination of alter ego liability, a plaintiff, however, must allege facts supporting the fraud or injustice requirement for alter ego liability to establish a well-pleaded complaint.  StrikeForce suggests that if allowed to conduct discovery, it would provide this court all the factors necessary to conduct a meaningful alter ego analysis.[57]

StrikeForce's argument undermines the purpose of the well-pled complaint requirement.  This requirement "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[58]  Here, StrikeForce knocks without suggesting fraud or injustice, nor alleging any facts supporting either element.  Consequentially, its alter ego theory is inadequate when measured against the

---

records, and whether the corporation is merely a facade for the operations of the dominant stockholder." (quoting *Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 886 (3d Cir. 1984) (emphasis in original)).

[56] D.I. 36 at 12.

[57] *Id.* ("Unlike the plaintiff in *Mobile Oil*, StrikeForce has not had the opportunity to conduct discovery and place before this Court all of the factors necessary to conduct a meaningful alter ego analysis.  Thus, the Court is not in a position to render final determination the merits as to whether FMBI and First Midwest Bank are alter egos of one another for the purposes of this patent infringement action.")

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).

requirements of Rule 12(b)(6).

**B.    Agency Theory**

Agency theory treats the parent and its subsidiary as two separate corporate

entities, holding the parent liable for the specific actions it directed or authorized the

subsidiary to perform.[59]  While agency theory requires a close connection between the

relationship of the corporations and the cause of action, it does not apply solely

because the parent has dominion and control over the subsidiary.[60]  Under this theory,

only the conduct shown to be instigated by the parent may be attributed to the parent.[61]

A claim is facially plausible (and thereby well-pled) when the plaintiff avers factual

content allowing the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.[62]  Reading StrikeForce's amended complaint in the light

most favorable to it as the non-moving party, the facts alleged reasonably support the

inference that FMBI directed First Midwest Bank's act of infringement.  Both FMBI and

First Midwest Bank operate at the same location, share the same board of directors,

and have the same governance policies and procedures.  These allegations suggest a

close connection in the operations of the two companies, making it reasonable to infer

FMBI authorized or directed the adoption of PhoneFactor's authentication service.

---

[59]  *See Mobile Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989) (describing difference between pure agency theory and alter ego theory).

[60]  *See C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (quoting *Mobile Oil*, 718 F. Supp. at 271) (reiterating need for close connection between relationship of corporations and cause of action); *see also Mobile Oil*, 718 F. Supp. at 271, n.15 (explaining liability found solely on parent's dominion and control of subsidiary is merely alter ego theory under a different name).

[61]  *See C.R. Bard,* 997 F. Supp. at 560 (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1464 (D. Del. 1991).

[62]  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

Merely showing the commingling of FMBI and First Midwest Bank may be insufficient to ultimately succeed on agency, but it is adequate to survive a motion to dismiss at this stage in litigation.

FMBI insists agency, like the alter ego theory, requires fraud or injustice in use of the corporate form.[63]  In support, it cites *Mobile Oil*.[64]  *Mobile Oil* distinguishes between "pure agency theory," and agency akin to an alter ego theory.[65]  The latter, based on the parent's pure dominion and control of the subsidiary, indeed requires a showing of fraud or injustice.[66]  Here, however, pure agency theory is being considered, and its standard requires a connection between the relationship of the corporations and the cause of action.  For this reason, StrikeForce is not required to allege facts supporting fraud or injustice.

Because the facts alleged support a reasonable inference that First Midwest Bank infringed as an agent of FMBI, StrikeForce's amended complaint is adequate.

### C.    Conversion to Summary Judgment

In deciding a motion to dismiss, a court should only consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.[67]  If the court relies on materials outside the

---

[63] D.I. 39 at 8.

[64] *Id.* (citing *Mobile Oil*, 718 F. Supp. at 271).

[65] *See Mobile Oil*, 718 F. Supp. at 271.

[66] *See id.* ("The attributes of this latter form of agency (i.e. based upon complete and dominion and control by the principal) are generally identical to those present when the corporate veil is pierced because of an alter ego relationship.").

[67] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

pleadings, a Rule 12(b)(6) motion is converted into a motion for summary judgment.[68]

FMBI proffered an affidavit of First Midwest Bank's General Counsel, Paul R. Simpson,

describing the corporate structure of the two entities and addressing First Midwest

Bank's service agreement with Phonefactor.[69]   As the Simpson affidavit was not

attached to the complaint, not a matter of public record, and not a document that formed

the basis of the claim, it is outside the scope of permissible materials for a 12(b)(6)

motion.

If a 12(b)(6) motion is converted to one under FED. R. CIV. P. 56, a plaintiff is

entitled to conduct discovery before the motion can be resolved.[70]   Since the court will

not consider any evidence or documents outside or and not integral to the amended

complaint, the standards of Rule 12(b)(6) apply.

## D.   Likelihood of Prevailing

FMBI argues StrikeForce fails to allege enough plausible facts to suggest that

discovery would uncover sufficient evidence to support either alter ego or agency

liability.[71]   FMBI urges the court dismiss the claims against it because having a

regulated wholly-owned subsidiary should not subject a parent corporation to discovery

expenses based on mere allegations of a typical corporate structure.[72]

Although the court understands the burden of litigation, the issue, however, is not

whether StrikeForce will ultimately prevail, but whether it is has met the requirements of

---

[68] *See* FED. R. CIV. P. 12(d).
[69] D.I. 32, Ex. 1.
[70] *See* FED. R. CIV. P.56(d).
[71] D.I. 39 at 9.
[72] *Id.*

13

Rule 12(b)(6) and is entitled to proceed with its claims.[73]  StrikeForce's agency claim is

plausible on its face, and, therefore, FMBI's motion to dismiss should be denied in part.

## III. CONCLUSION

StrikeForce's amended complaint is sufficient because it contains adequate facts

supporting a claim of patent infringement.  StrikeForce proffered enough facts in its

amended complaint to support the theory that FMBI's subsidiary, First Midwest Bank,

infringed the patent-at-issue while acting as its agent.  Because StrikeForce's non-

conclusory factual allegations in support of its infringement claims satisfies *Twombly*,

*Iqbal*, and the requirements of Form 18, FMBI's motion to dismiss for failure to state a

claim of infringement and agency should be denied.

## IV. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, the court recommends that:

Defendant's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to

state a claim upon which relief can be granted (D.I. 31) be GRANTED in part and

DENIED in part.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 71.2.  The parties may serve and file

specific written objections within ten (10) days after being served with a copy of this

Report and Recommendation.

The parties are directed to the Court's standing Order in Non-Pro Se matters for

objections filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is

---

[73] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)
(internal quotation marks and citation omitted).

available on the Court's website, www.ded.uscourts.gov.


Date:  November 14, 2013          /s/ Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE